**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
www.flsb.uscourts.gov

In re:                                    Chapter 11

AG 11, LLC,                               Case No. 15-11758-RAM

       Debtor.

_____/

**EMERGENCY MOTION OF VMI ENTERTAINMENT, LLC**
**FOR RELIEF FROM THE AUTOMATIC STAY**

**Emergency Hearing Requested on the afternoon of Tuesday, February 3, 2015**

**VMI is scheduled for trial on Wednesday, February 4, 2015 against the Debtor, the Debtor's corporate sibling and fellow chapter 11 debtor AG 11, LLC, and both entities' non-debtor principal Gregory Blanco. VMI understands the state court is holding the trial date in the event VMI's motions for remand and stay relief are heard and granted on February 3, 2015. In addition, two of VMI's representatives have traveled from Russia to Miami to participate in this trial. Accordingly, VMI seeks a hearing on Tuesday, February 3, 2015, to preserve VMI's trial date and to protect VMI's representatives.**

VMI Entertainment, LLC ("**VMI**") moves pursuant to section 362(d)(1) of the

Bankruptcy Code for relief from the automatic stay to the extent and for the reasons set forth in

its *Memorandum of Points and Authorities in Support of (I) Emergency Motions for Remand or,*

*in the Alternative, for Discretionary Abstention; and (II) Emergency Motions for Relief from the*

*Automatic Stay* (the "**Memorandum**"), which is attached as **Exhibit** "**A**" hereto and is

incorporated by reference.[1]

---

[1]    Except for its caption, the Memorandum is identical in each of the four motions arising from the removal to this Court of the civil action styled *VMI Entertainment, LLC v. GM Entertainment, LLC, et al.*, No. 2012-5691-CA, formerly pending in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida.

Dated: February 2, 2015          Respectfully submitted,

                                 **GREENBERG TRAURIG, P.A.**
                                 333 S.E. 2nd Avenue, Suite 4400
                                 Miami, Florida 33131
                                 Telephone: (305) 579-0500
                                 Facsimile: (305) 579-0717


                                 By: /s/ John R. Dodd
                                 Paul J. Keenan, Jr.
                                 Fla. Bar. No. 0594687
                                 keenanp@gtlaw.com
                                 John R. Dodd
                                 Fla. Bar No. 38091
                                 doddj@gtlaw.com

                                 *Counsel for VMI Entertainment, LLC*

<u>**CERTIFICATE OF SERVICE**</u>

       I hereby certify that on February 2, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the Service List below, either via transmission of Notices of Electronic Filing generated by CM/ECF or by first class U.S. mail, postage prepaid, for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                         <u>/s/John R. Dodd</u>
                         John R. Dodd

<u>**Electronic Mail**</u>:

Nicholas B. Bangos, Esq. on behalf of Debtor
nbangos@diazreus.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

<u>**U.S. Mail**</u>:

None.

# Exhibit A

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov

In re:                                                    Chapter 11

AG 11, LLC,                                               Case No. 15-11758-RAM

      Debtor.

_____/

### VMI ENTERTAINMENT, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS (I) MOTIONS FOR REMAND OR, IN THE ALTERNATIVE, FOR PERMISSIVE ABSTENTION; AND (II) MOTIONS FOR RELIEF FROM STAY

      VMI Entertainment, LLC ("**VMI**") submits this memorandum of points and authorities in support of its (i) *Emergency Motion for Remand or, in the Alternative, for Permissive Abstention* filed in Adversary No. 15-01074-RAM (the "**Wynwood Motion for Remand**"); (ii) *Emergency Motion for Remand or, in the Alternative, for Permissive Abstention* filed in Adversary No. 15-01075-RAM (the "**AG 11 Motion for Remand**"); (iii) *Emergency Motion for Relief from Stay* filed in Case No. 15-11752-RAM (the "**Wynwood Motion for Stay Relief**"); and (iv) *Emergency Motion for Relief from Stay* filed in Case No. 15-11758-RAM (the "**AG 11 Motion for Stay Relief**").  In support of these four motions (the "**Motions**"), VMI respectfully states as follows:

### Introduction

      1.      VMI obtained a $3,000,000 judgment for fraud against the Debtors' principal's father (Ricardo Blanco), relating to the purchase and sale of a nightclub in Tallahassee.  Through the efforts of its investigators and attorneys VMI traced the $1,715,250 purchase price to the Debtors' principal and the Debtors, which used the purchase price to buy a bar in Wynwood named the "Brick House Bar".  VMI commenced proceedings supplementary in the fraud case to adjudicate (among other things) whether the primary defendant Ricardo Blanco fraudulently

titled the "Brick House Bar" in the name of his young son, Gregory using Plaintiff's funds to purchase the bar and avoid payment of Plaintiff's judgment.

2.      After a series of adverse rulings from State Court[1]—including a preliminary injunction and discovery sanctions—the Debtors commenced these Bankruptcy Cases on the eve of trial.  Two of VMI's principals have traveled from Russia to participate in the trial.  Other than removing the State Court Lawsuit, the Debtors have not sought "first day" relief or filed schedules or statements of financial affairs.  Based on these circumstances, remand or abstention is warranted in the interests of comity, to prevent unfair prejudice to VMI and its principals, and to deter the Debtors' forum shopping.  For the same reasons, "cause" exists to terminate the stay as to the State Court Lawsuit upon remand or abstention to the State Court.

## Jurisdiction

3.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper under 28 U.S.C. §§ 1408 and 1409.

4.      The statutory predicate for the relief requested herein is 11 U.S.C. § 362 and 28 U.S.C. §§ 1334 and 1452.

## Background

A.      The Debtors

5.      On January 29, 2015 the ("**Petition Date**"), Wynwood Entertainment, LLC and AG 11, LLC (collectively, the "**Debtors**") each filed in this Court voluntary petitions for relief under chapter 11 of the Bankruptcy Code, commencing their respective bankruptcy cases *In re Wynwood Entertainment*, No. 15-11752-RAM, and *In re AG 11, LLC*, No.15-11758-RAM

---

[1]     Capitalized terms used by not defined in this Introduction are defined in the body of this Memorandum.

2

(collectively, the "**Bankruptcy Cases**").  The Debtors are both Florida limited liability companies.

6.      AG 11 owns the real property located at 187 NW 28th Street, Miami, Florida 33127.  The property is leased by AG 11 to Wynwood Entertainment, which uses the premises to operate a bar and restaurant named "Brick House Bar."  Both AG 11 and Wynwood Entertainment are purportedly wholly-owned by Gregory Blanco ("**Gregory**).

B.      Status of the Debtors' Cases

7.      The Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

8.      No request for joint administration of the Bankruptcy Cases has been made.  No Official Committee of Unsecured Creditors has yet been appointed.  No trustee or examiner has been appointed in these Chapter 11 Cases.

9.      No schedules or statements of financial affairs have yet been filed.

10.      No "first day" relief has been sought in these Bankruptcy Cases.  The absence of requests for "first day" relief by Wynwood Entertainment is puzzling in that it is operating the Brick House Bar.  It presumably has pre-petition claims for employee wages and ordinary course vendor relationships.

11.      Although the Debtors have not sought any "first day" relief, they have removed the state court lawsuit styled *VMI Entertainment, LLC v. GM Entertainment, et al.*, No.  2012-5691-CA (the "**State Court Lawsuit**"), formerly pending in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida (the "**State Court**").

12.      The Debtors removed the State Court Lawsuit twice by filing nearly identical Notices of Removal in Wynwood Entertainment's bankruptcy case, commencing Adversary Proceeding No. 15-01074 (the "**Wynwood Adversary**") and in AG 11's bankruptcy case,

3

commencing Adversary Proceeding No. 15-01075 (the "**AG 11 Adversary**"; together with the Wynwood Adversary, the "**Adversary Proceedings**"), on the afternoon of January 30, 2015 (the "**Removal Date**").

C.    VMI

13.    VMI is owned by Murat Datiev, Igor Datiev, and Vadim Muhkin.  The Datiev brothers live in Russia.  VMI is a Florida limited liability company.

D.    The State Court Lawsuit and Background to Fraud Judgment

14.    At the conclusion two years of proceedings in the State Court, VMI obtained a judgment for fraud in the amount of $3,000,000 entered in the State Court Lawsuit on November 4, 2013 (the "**Fraud Judgment**").  *See* Corrected Final Judgment, a copy of which is attached as Exhibit "1" to the Notices of Removal.  The Fraud Judgment is against Ricardo Blanco ("**Ricardo**"), Gregory's father; Yury Bekerman ("**Yury**"), Gregory's brother; and GM Entertainment, LLC, a company of Ricardo and Yury.

15.    Ricardo previously owned and operated the 2020 Nightclub in Tallahassee, Florida, using his son Yury as the nominal officer, director, and owner of the liquor license and operating company for that establishment.  VMI agreed with Ricardo and Yury to purchase the 2020 Nightclub, and pursuant to the agreement VMI transferred funds to Ricardo (the "**Purchase Price**").  Although the Purchase Price was transferred to Ricardo, the material terms of the sale transaction were never consummated.

16.    Based on these circumstances, VMI commenced the State Court Lawsuit in December 2012, and VMI's claims were ultimately tried to a jury.  The jury found for VMI and against Ricardo, Yury, and GM Entertainment, leading to entry of the Fraud Judgment by the State Court.  The Fraud Judgment has been affirmed through two separate appellate proceedings.

4

F.      Background to and Status of Proceedings Supplementary

17.      Through substantial efforts of its private investigators and attorneys VMI has

found the Brick House Bar in Miami owned by Ricardo but placed nominally in the name of his

other son Gregory to avoid payment of the Plaintiff's judgment.  VMI has further traced the

Purchase Price to the purchase of the Debtors' real property and build out of the "Brick House

Bar" as exclusively to the funds of VMI.

18.      Accordingly, on October 2, 2014, VMI commenced proceedings supplementary in

the State Court Lawsuit.  The proceedings are against Gregory, Wynwood Enterprises, and

AG 11.  Among other relief, VMI seeks entry of judgment that the "Brick House Bar," including

the real property, its retail beverage license, and its business, are property of VMI.

19.      In the proceedings supplementary, the State Court has completed the pleadings

stage and discovery.  The State Court has scheduled a trial on VMI's claims in the proceedings

supplementary for February 4, 2015 (the "**Trial**").  VMI understands the State Court is holding

the trial date pending the outcome of the Motions.

20.      The State Court has entered preliminary relief in favor of VMI and discovery

sanctions against Gregory, Wynwood Entertainment, and AG 11.  In particular:

- VMI has obtained a preliminary injunction against Gregory, Wynwood
  Entertainment, AG 11 enjoining any sale, transfer or encumbrance of the "Brick
  House Bar," including its real property and retail beverage license.[2]

- VMI has obtained an order compelling Ricardo to provide deposition testimony,
  discovery responses, and documents.[3]  Ricardo has failed to comply with this
  order.  As a sanction for his subsequent failure to produce documents, the State
  Court has precluded Gregory, Wynwood Entertainment, or AG 11 from
  introducing related documents at trial.[4]

---

[2]     A copy of the State Court's *Agreed Order on Extension of Preliminary Injunction* is attached as **Exhibit** "**A**" hereto.

[3]     A copy of the State Court's order is attached as **Exhibit** "**B**" hereto.

[4]     A copy of the order is attached as **Exhibit** "**C**" hereto.

- VMI has obtained an order compelling the deposition of Alla Maze[5] who is alleged by Gregory to have funded, at least in part, the purchase and build out of the "Brick House Bar."[6] Alla Maze failed to appear for her deposition. As a sanction for which she will be stricken as a witness at trial.

21. VMI's principals have traveled from Russia to Miami to participate in the trial.

<u>**Relief Requested**</u>

22. VMI requests the entry of an Order remanding the Adversary Proceedings to the State Court or, in the alterative, abstaining from the Adversary Proceedings; and terminating the stay as to the State Court Lawsuit,

<u>**Basis for Relief Requested**</u>

**A.    Remand of or Permissive Abstention from the Adversary Proceedings is warranted.**

23. By statute, "[t]he court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground." 28 U.S.C. § 1452(b). Similarly, the doctrine of permissive abstention applies where "in the interest of justice, or in the interest of comity with State courts or respect for State law" the court finds it appropriate to abstain "from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 1334(c)(1).

24. The doctrines of equitable remand and permissive abstention are similar and courts generally consider the same factors in analyzing both sections. *Lennar Corp. v. Briarwood Capital LLC*, 430 B.R. 253, 267 (Bankr. S.D. Fla. 2010) (citing *In re United Container LLC*, 284 B.R. 162, 176 (Bankr. S.D. Fla. 2002)). Courts consider the following factors relevant to the analysis of remand and permissive abstention:

(1) the effect, or lack of effect, on the efficient administration of the bankruptcy estate if discretionary abstention is exercised, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable state law, (4) the presence of related proceedings commenced in

---

[5]    Alla Maze is Gregory and Yury's mother and Ricardo's "common law" wife.

[6]    *See* Ex. C.

state court or other non-bankruptcy courts, (5) the jurisdictional basis, if any, other than § 1334, (6) the degree of relatedness or remoteness of the proceedings to the main bankruptcy case, (7) the substance rather than the form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden on the bankruptcy court's docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to jury trial, (12) the presence in the proceeding of non-debtor parties, (13) comity, and (14) the possibility of prejudice to other parties in the action.

*Id.*

25.     Three factors weigh heavily in favor of remand or abstention: comity, judicial economy, prejudice to VMI, and forum shopping by the Debtors.  The time and effort already expended by the State Court in conducting a jury trial on related matters and in completing the pleadings stage and discovery in the State Court Lawsuit favors remand or abstention.  *See Lennar Corp.*, 430 B.R. at 268 (quoting *Lone Star Industries, Inc. v. Liberty Mutual Insurance*, 131 B.R. 269, 274 (D. Del. 1991) (as "a matter of comity, remand would display a proper respect for a state court's role in deciding a purely state law case, and ***in particular, [the state court judge's] prior investment of time and efforts in managing the case***") (emphasis added; alteration in original).   Requiring these issues to be relitigated from the beginning in this Court would be an unnecessary waste of judicial resources.  The State Court Lawsuit began in 2012 in state court, has been through jury trial and two appellate proceedings, has been completely through the pleadings and discovery in the State Court on a supplementary proceedings complaint, and is now ready for Trial.  The effort expended in the State Court on the matters pending in the Adversary Proceedings includes not only completing the pleadings stage and discovery but also the entry of an involved preliminary injunction and discovery sanctions limiting the evidence that may be used at Trial.

26.     The need to duplicate some or all of these efforts before this Court would unfairly prejudice VMI.  It would also be unfairly prejudicial to render a nullity the expense and effort of VMI's principals in flying from Russia to Miami specifically to participate in the Trial.[7]

27.     Moreover, the Debtors' forum shopping should not be rewarded.  The inference of forum shopping can be drawn from the record of adverse rulings in the State Court, including but not limited to the Fraud Judgment, the preliminary injunction, and the discovery rulings precluding evidence.  The inference can also be drawn from the Debtors' "bare bones", eve-of-trial filing without any "first day" motions in which the only immediate relief sough was removal of the State Court Lawsuit.  Further inference can be drawn from the lack of any substantial creditors on either Debtors' list of twenty largest unsecured creditors.

28.     Other factors also favor remand or abstention.  The legal issues in the Adversary Proceedings are solely state law issues.  The jurisdictional basis is solely 28 U.S.C. § 1334. There will be further proceedings in the State Court Lawsuit against Ricardo and Alla Maze that would need to be conducted in the Adversary Proceedings if they are not remanded.

29.     Finally, allowing the State Court to determine the ownership of the "Brick House Bar" will not impede the efficient administration of the Bankruptcy Cases.  VMI's claims against the "Brick House Bar," which included disputed claims to title of its real property and other assets, must be decided before a sale or confirmation of a chapter 11 plan.[8]  The State Court is ready to make these determinations without delay.

---

[7]     Further prejudice is imposed on the VMI by the Debtors efforts to circumvent the State Court's preliminary injunction in light of AG 11 discussing and considering surrendering its real property to its secured lender via a deed-in-lieu.  *See* Excerpt of Deposition of James Saada 21:1-9 & 35:15-21 (November 11, 2014), a copy of which is attached as **Exhibit** "**D**" hereto.

[8]     The absence of "first days" makes it impossible to know the Debtors' intentions for these Bankruptcy Cases. However, based on the statements and positions of the Debtors in the State Court Lawsuit, the Debtors may intend to seek a sale of substantially all their property.

**B.    Cause exists to terminate the stay as to the Adversary Proceedings to allow the State Court Lawsuit to proceed to trial.**

30.    Section 362(d)(1) of the Bankruptcy Code permits relief from stay "for cause".

One example of "cause" for relief from stay is to allow litigation to continue in another forum.

31.    If the Court remands or abstains from the Adversary Proceedings, then cause

exists to terminate the stay so as to allow the State Court Lawsuit to continue and the Trial go

forward as scheduled.  The reasons are the same as those warranting remand or abstention: the

time and effort already expended by the State Court, the prejudice to VMI's principals in having

to return to Miami and in having to duplicate in the Bankruptcy Court their efforts before the

State Court, and the Debtors' clear forum shopping.

### Local Rule 9075-1 Certification

32.    Counsel for VMI and counsel for the Debtors had a telephonic call to attempt to

resolve this matter without a hearing, but were unable to reach a resolution.  Counsel for the

Debtors has advised counsel for VMI that he is unavailable in the morning of Tuesday, February

3, 2015, because is he in bankruptcy court in Ft. Lauderdale.

### Conclusion

WHEREFORE, VMI respectfully requests the entry of an Order (i) granting the Motions;

(ii) remanding the Adversary Proceedings to the State Court or, in the alterative, abstaining from

the Adversary Proceedings; and (iii) terminating the stay as to the State Court Lawsuit.

Dated: February 2, 2015                          Respectfully submitted,

                                                 **GREENBERG TRAURIG, P.A.**
                                                 333 S.E. 2nd Avenue, Suite 4400
                                                 Miami, Florida 33131
                                                 Telephone: (305) 579-0500
                                                 Facsimile: (305) 579-0717

                                                 By: _/s/John R. Dodd_____
                                                 Paul J. Keenan, Jr.
                                                 Fla. Bar. No. 0594687
                                                 keenanp@gtlaw.com
                                                 John R. Dodd
                                                 Fla. Bar No. 38091
                                                 doddj@gtlaw.com

                                                 *Counsel for VMI Entertainment, LLC*

IN THE CIRCUIT COURT OF THE 11th JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

VMI ENTERTAINMENT, LLC,

        Plaintiff,

v.

CASE NO: 12-5691 CA (58)

GM ENTERTAINMENT, LLC, YURY BEKERMAN, and RICARDO BLANCO, et al.

        Defendants.

_____/

## AGREED ORDER ON EXTENSION OF PRELIMINARY INJUNCTION

THIS CAUSE having come before the Court on the Motion for Emergency Preliminary Injunction, and upon agreement of the Plaintiff, VMI Entertainment, LLC, and the Implead Parties, Gregory Blanco, AG 11, LLC, Wynwood Entertainment, LLC, and Maze Construction, LLC is:

ORDERED AND ADJUDGED that the preliminary injunction granted in the October 17, 2014 Order for Interim Relief will be extended for the duration of six (6) months or until a judgment determining whether the implead parties in the proceedings supplementary should be subject to the execution of Plaintiff's judgment, whichever is shorter. The parties may seek further extension of the temporary injunction as is appropriate.

DONE AND ORDERED at Miami-Dade County, Florida, this ___ day of _____, 2014.

CONFORMED COPY

OCT 24 2014

_____
JUDGE BEATRICE BUTCHKO   BEATRICE BUTCHKO
CIRCUIT COURT JUDGE      CIRCUIT COURT JUDGE

Copies Furnished To:

Peter F. Valori, Esq.
Mark A. Kamilar, Esq.

*No Sale, transfer or encumbrance without notice to opposing counsel and of an emergency motion with the Court shall be made of the real property located at 187 NW 28th Street Miami, FL 33127, the Brick House bar business, the bulk contents of the bar business and/or the retail beverage license BEV2329349 in effect and utilized in the Brick House Bar*

EXHIBIT A

IN THE CIRCUIT COURT O    HE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CIRCUIT CIVIL DIVISION
CASE NO: 2012 - 5691 CA 42

VM1

           Plaintiff(s),

     vs.                                    ORDER
                                    GRANTING/DENYING
                                    PLAINTIFF'S/DEFENDANT'S
   GM                               motion for sanctions

           Defendant(s),

_____

           THIS CAUSE having come on to be heard on _____ 11/17/14 _____

on Plaintiff's/Defendant's Motion

    for Sanctions Against Ricardo Blanco

and the Court having heard arguments of counsel, and being otherwise advised in the premises, it is hereupon

           ORDERED AND ADJUDGED that said Motion be, and the same is hereby

Granted. Ricardo Blanco shall answer interrogatories, respond to request for
production, respond to request for admissions without objection as objections
are waived. Discovery shall be filed within ten days of the date of this
Order and Ricardo Blanco shall present himself for deposition when called by
Plaintiff within 10 days thereafter. Ruling on sanctions is deferred.

           DONE AND ORDERED in Chambers at Miami-Dade County, Florida this __17th__

day of _____ Nov _____, 2014

                                    _____
                                    CIRCUIT COURT JUDGE

                                    Beatrice A. Butchko
                                    Circuit Court Judge

Copies furnished to: Counsel of Record

117_01-554  3/11

**EXHIBIT B**

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CIRCUIT CIVIL DIVISION
CASE NO: 2012-5691 CA 42

V M 1

       Plaintiff(s),

YS.

GM Entertainment

       Defendant(s),

ORDER
GRANTING/~~DENYING~~
PLAINTIFF'S/~~DEFENDANT'S~~
MOTION TO COMPEL

THIS CAUSE having come on to be heard on _____ 1/12/15
on Plaintiff's/~~Defendant's~~ Motion

TO COMPEL AND FOR SANCTIONS

and the Court having heard arguments of counsel, and being otherwise advised in the premises, it is hereupon

ORDERED AND ADJUDGED that said Motion be, and the same is hereby

GRANTED. Alla Maze shall attend her deposition currently set for January 21, 2015 or shall be subject to sanctions including contempt and being stricken as a witness at trial. With reference to documentary evidence, any documents not produced as of this date shall be excluded from Defendant and Third party defendants trial evidence as a sanction for non compliance with this Courts Orders including but not listed to the Order of 12/10/14. Plaintiffs request for fees and other sanctions are carried with the case.

DONE AND ORDERED in Chambers at Miami-Dade County, Florida this _____ 12

day of _____ Jan _____ 2015

CONFORMED COPY

JAN 12 2015

CIRCUIT COURT JUDGE

ORIGINAL

JUDGE BEATRICE BUTCHKO

Copies furnished to: Counsel of Record

117_01-554  3/11

EXHIBIT C

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT, IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CASE NO. 2012-5691-CA-42

VMI ENTERTAINMENT, LLC,

    Plaintiff,

vs.

GM ENTERTAINMENT, LLC,
YURY BEKERMAN, and
RICARDO BLANCO,
    Defendants.

_____/

2025 Tyler Street
Hollywood, Florida
November 11th, 2014
10:15 a.m. - 11:05 a.m.

DEPOSITION OF JAMES SAADA

Taken before JOANNE CAUDILL, Court Reporter and Notary

Public in and for the State of Florida at Large, pursuant

to Notice of Taking Deposition filed in the above cause.

SCHOFEL, SOBEL REPORTING, INC.
(305) 324-5431

EXHIBIT D

1    either a mortgage or --

2        A.    Some interest, management for family.

3        Q.    Okay.

4              Now, in addition to buying and selling

5    properties, your business is also involved in writing

6    mortgages for commercial and residential real estate?

7        A.    Somewhat, yeah.

8        Q.    Okay.

9        A.    Not necessarily me but other family members.

10       Q.    Okay.

11             In the course of your business did you or any

12   entity you were involved in acquire property located at

13   187 Northwest 28th Street Miami, Florida?

14       A.    Yes.

15       Q.    All right.

16             What is located there, sir?

17       A.    Currently or how I bought it?

18       Q.    How you bought it.

19       A.    I bought it as like a CBS, stucco/wood house in,

20   I would say, 2006, early 2006.

21       Q.    That's 2006?

22       A.    Yes.

23       Q.    You purchased it?

24       A.    Yes.

25       Q.    Where was this located?  Is that the Wynwood

1    area?

2        A.    Yes.

3        Q.    Had you purchased other properties in the Wynwood

4    area?

5        A.    Yes.

6        Q.    And approximately how many square feet was this

7    building?

8        A.    The house was probably around 11 or 1,200 feet.

9        Q.    And what about the lot?

10       A.    Sixty-nine fifty, 6,950.

11       Q.    And when you purchased it, did you have the

12   intention of doing something with it commercially or

13   residentially?

14       A.    Neither.

15       Q.    Okay.

16       A.    I was accumulating parcels and that was one that

17   was a layover, and then prior to owning it I sold the

18   surrounding property and I was -- for appreciation I

19   bought it.

20       Q.    Okay.

21             And at some point did you offer that property for

22   sale, the CBS/wood house?

23       A.    Yes.

24       Q.    Approximately when was that, sir?

25       A.    I would say sometime mid-2012.

1     Q.    All right.

2           And had you made any use of that wood house

3     between 2006 and 2012?

4     A.    No.  No.  I did some renovations, you know.  I

5     thought about renting it but just never did.

6     Q.    Okay.

7           And did you acquire that property in the name of

8     Raspberry Properties, LLC?

9     A.    Initially I acquired under my name and then I

10    transferred it to Raspberry Properties.

11    Q.    When you offered it for sale, how did you go

12    about offering this CBS/wood house for sale?

13    A.    At one point I listed it with a local broker and

14    then I just put a sign up for sale by owner.

15    Q.    Okay.

16          And at some point did you receive a response from

17    an individual who became known to you as Ricardo Blanco?

18    A.    Yes.

19    Q.    I want to show you some photographs which we have

20    in Exhibit 1, I think it's six photographs, and I would

21    ask if you could take a look at these photographs and ask

22    if you are able to identify the individual in those

23    photographs.

24    A.    This one, the first one clearly.  The second

25    one -- I mean, I'm assuming it's him but -- yes.

1    Q.    And who is the individual that you see in those

2  photographs?

3    A.    Ricardo Blanco.

4    Q.    Okay.

5        Now, how is it that you first made the

6  acquaintance of Mr. Ricardo Blanco?

7    A.    He called the number on the sign, my cell phone

8  number, we met in front of the property, and that was it.

9    Q.    All right.

10       What was said between the parties on the phone

11  call and then subsequently when you got to the property?

12    A.    That he wanted to buy my property.

13    Q.    Okay.

14       Did he indicate what he wanted to do with the

15  property?

16    A.    Not initially, you know.  Later on, you know,

17  restaurant bar, that type of thing he mentioned, but

18  nothing, nothing really.

19    Q.    In the first conversation on the phone, was it

20  just to set up the subsequent meeting at the property?

21    A.    I think it was....  I may have been in the

22  neighborhood and he gave me a call and it happened like

23  within 15 minutes.

24       Yeah, that's the way I recall it.

25    Q.    And when you went to the property, you let him

1          And was there anyone else with him at the time?

2     A.   Yes.

3     Q.   Who was with him at the time?

4     A.   His son.

5     Q.   Okay.

6          Is that Gregory Blanco?

7     A.   Yes.

8     Q.   Had you ever met Gregory Blanco before?

9     A.   The first time when he saw the property, the

10  first day we met, his son was with him.

11    Q.   Did the son say anything?

12    A.   No.

13    Q.   What about at the closing, did the son say

14  anything?

15    A.   Not really.

16    Q.   All of the --

17    A.   He was a quiet, nice kid.

18    Q.   All of the talking at the closing was done by

19  Ricardo Blanco?

20    A.   It was pretty quick.  I was trying to catch an

21  airplane so there was really no -- there was very light

22  conversation.

23    Q.   Again, do you recall Gregory Blanco saying

24  anything at the closing?

25    A.   Don't recall.

1    MS. PARIS:  I thought it was 11.

2    MR. KAMILAR:  For purposes of this

3    deposition, if I say AGII or AG11, it's the

4    same.

5 BY MR. KAMILAR:

6    Q.    I hand you what has been marked Plaintiff's

7 Composite Number 2 for Identification, and ask if you know

8 what these document are or purport to be.

9    A.    Yes.

10    Q.    What are those document, sir?

11    A.    My closing documents, my mortgage, my deed.

12    Q.    Let me just kind of go through these for a

13 second.  We've got a Compliance Agreement and Non-Coercion

14 Statement.

15        The Promissory Note is for $250,000, sir?

16    A.    Yep.

17    Q.    All right.

18        It appears to be monthly payments of $1,458.33?

19    A.    Yes.

20    Q.    And this was for a period of 48 months?

21    A.    Yes.

22    Q.    Have they been current in those payments?

23    A.    Yes.

24    Q.    Have they missed any payment?

25    MR. VALORI:  Objection to the form.

1        THE WITNESS: They did not miss one

2    payment.

3  BY MR. KAMILAR:

4    Q.    Have they been late on any payments?

5        MR. VALORI:  Objection to form.

6        THE WITNESS:  No.  Nope.

7  BY MR. KAMILAR:

8    Q.    This Mortgage Deed is the deed by which you

9  understand you transferred your interest in this property

10 to AG11, LLC?

11   A.    Was that a question?

12   Q.    Yes.

13   A.    Can you repeat the question?

14   Q.    Yes.   This Mortgage Deed, is this the document by

15 which you understand that you transferred your ownership

16 interest from Raspberry Properties, LLC, your owning

17 entity?

18   A.    Yes.

19   Q.    To AG11, LLC?

20   A.    Yes.

21   Q.    Their owning entity?

22   A.    Yes.

23   Q.    Now, sir, in connection with the closing there's

24 also a Deed-in-Lieu Agreement, is there not?

25   A.    Yep.

SCHOFEL, SOBEL REPORTING, INC.
(305) 324-5431

1    Q.    And is it your understanding that essentially if

2  they miss a payment you have the right to file this

3  Deed-in-Lieu of Foreclosure?

4         MR. VALORI:  Objection to form.

5         THE WITNESS: Sorry.

6         MR. VALORI:  Give me half a second.

7         THE WITNESS:  Sorry.

8         MR. VALORI:  That's okay.  Go ahead.

9         THE WITNESS: Yes.

10  BY MR. KAMILAR:

11    Q.    Okay.

12         You haven't filed this Deed-in-Lieu of

13  Foreclosure, have you, sir?

14    A.    No.

15    Q.    I had asked you to look to see if you could find

16  the account from which you received a payment of the

17  $250,000.  Were you able to determine that, sir?

18    A.    No.

19    Q.    In your research?

20    A.    No.

21    Q.    You had an attorney who represented you in this

22  transaction?

23    A.    Yes.

24    Q.    What is his name?

25    A.    Andrew Lee.

1  has either for himself or through others by way of real

2  property, personal property, cars, boats, anything that we

3  haven't discussed?

4      A.    No.

5      Q.    Do you know any other real property, cars or

6  assets that Gregory Blanco owns either individually or by

7  and through an entity or any other person?

8      A.    No.

9      Q.    Other than what we have discussed?

10     A.    No.

11     Q.    All right.

12          Did you have a discussion with Gregory Blanco

13  recently about potentially buying the building from him?

14     A.    Yes.

15     Q.    In that circumstance you would -- strike that.

16          Did you discuss potentially buying back the

17  building and renting it to him?

18     A.    Yes.

19     Q.    What was his response?

20     A.    He didn't -- wasn't interested.   He was thinking

21  about it.

22          MR. KAMILAR:  Okay.  I have no further

23      questions at this time.

24

25